# FisherBroyles

**Robert P. Lesko**
Partner
robert.lesko@fisherbroyles.com
Direct: 973-917-8686
Cell: 973-714-0340
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
www.FisherBroyles.com

September 15, 2020

**ECF**

Steven C. Mannion, USMJ
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re: Ameritas Life Ins. Corp. v. Wilmington Trust, N.A., USDCNJ no. 2:19-cv-18713

Dear Magistrate Judge Mannion:

We write to apprise your Honor of an unresolved dispute concerning written discovery and seek the Court's guidance with respect to its resolution. The parties have conferred via telephone and email regarding this dispute, but have been unable to resolve the dispute without court intervention.

**Ameritas' Position**

Defendant has still not completed its document production. Ameritas seeks a date certain by which the production will be completed. In addition, defendant has refused to provide responsive, relevant and non-privileged documents in response to Ameritas' document request number 12[1]. Ameritas seeks an order requiring production of all relevant, non-privileged documents responsive to request number 12.

Counsel for the parties agreed in December to each make a full voluntary production of all relevant, non-privileged documents. Ameritas did so on January 31 and February 21, which production included all relevant, non-privileged documents, including those requested by defendants. Defendant did not honor its agreement to make a full voluntary production; instead, it produced a paltry 128 pages.

Ameritas served document requests by email on April 21. As of the status conference on August 3, Defendant had not produced documents. Your Honor ordered defendant to commence rolling production within 7 days of the conference. Defendant finally made its initial production on August 9, but then did not produce any documents until September 13 (which Ameritas has not yet had the opportunity to review). On August 28, Ameritas requested a privilege log. In response, counsel for defendant advised that defendant "will be producing privilege log(s) in the course of its rolling production." Ameritas respectfully requests a date certain by which defendant will complete its production and produce privilege logs.

---

[1] Although defendant has asserted improper "general objections" and boilerplate objections to almost every single discovery request posed by Ameritas, document request 12 appears to be the only request with respect to which defendant has expressly refused to produce responsive documents or information. If it becomes evident that defendants have otherwise improperly withheld relevant documents or information (such as upon receipt and review of privilege logs), Ameritas will promptly seek resolution at that time.

Steven C. Mannion, USMJ

September 15, 2020   |   Page 2 of 4

Ameritas' also requested on August 28 supplemental production of documents in response to Ameritas' document request number 12.  Request number 12 seeks "communications between Geronta Funding or any of its agents and EEA, ViaSource or any parents, subsidiaries, affiliates, principals or agents of EEA or ViaSource."  Defendant has limited its production of documents in response to request number 12 to those "that specifically refer to the Sarn Policy."  This limitation is improper because it would exclude other relevant communications that do not specifically reference the Sarn policy.

Ameritas seeks a declaration that the Sarn policy is void ab initio because it was instigated by strangers or was purchased with an intention to transfer it to strangers with no insurable interest in Sarn's life.  Ameritas also seeks a declaration as to whether it is obligated to refund premiums to defendant, and if so, how much.  To the extent that either EEA or defendant knew or should have known that the policy was issued without valid insurable interest, such actual or constructive knowledge will bear upon the extent of Ameritas' obligation, if any, to refund premiums for the rescinded policy.  The communications that Ameritas seeks by way of document request number 12 are potentially relevant to this issue.

The Sarn Policy was transferred to EEA from its initial owner very soon after the two-year contestable period expired.  ViaSource is an agent of EEA responsible for identifying and purchasing policies on behalf of EEA, including the Sarn Policy.  Defendant later purchased the policy from EEA as part of a portfolio of policies.  Defendant, by itself or through its agents, engaged in a due diligence review of the portfolio that includes the Sarn policy.  Documents produced by EEA/ViaSource in connection with said due diligence review and communications relating to that review may reveal concerns ("red flags") pertaining to the manner in which policies within the portfolio were originated and the lack of insurable interest resulting therefrom.  Such communications would not only be relevant to the underlying question of insurable interest, but also red flags relating to insurable interest of which defendant was or should have been aware.  Such red flags would affect the balancing of equities that this Court would have to perform in determining whether defendant is entitled to refund of any portion of premium paid for the Sarn policy.  Ameritas respectfully requests that defendant be ordered to produce all documents responsive to request number 12, whether or not it refers to the Sarn policy.

**Defendant's Response**

As a preliminary matter, although Plaintiff continues to reference a voluntary exchange of documents that occurred pre-discovery in this matter, Plaintiff's characterization of that exchange is woefully inaccurate.  Plaintiff suggests the parties agreed to produce all relevant documents at the time.  In reality, the parties agreed to informally exchange some documents that might facilitate an early resolution of the dispute, but by no means did the parties agree that the production would be all-encompassing nor do the federal rules require such an exchange.  Plaintiff's continued reliance on that informal exchange to both satisfy its discovery obligations and assert fault on the part of Defendant is entirely misplaced.

On August 17, 2020,[2] the Court issued an order requiring, among other things, Defendant to begin a rolling production of documents to Plaintiff within 7 days of the Order (or by August 26, 2020).  Consistent with that Order, Defendant has provided two separate productions of documents, on August 9, 2020 (prior to entry of the Order) and September 13, 2020.  In addition, Defendant informed Plaintiff that it anticipates its third and final production to be ready within two weeks.  Defendant is also in the process of finalizing its

---

[2] Although it appears the order was signed by the Court on August 4, 2020, it was not docketed and served via CM/ECF until August 17, 2020.

Steven C. Mannion, USMJ

September 15, 2020  |  Page 3 of 4

privilege log, which will be delivered to Plaintiff on a rolling basis, commencing this week. Defendant's actions in this regard are entirely consistent with the directive provided by the Court during the August 3, 2020 hearing and in the August 17, 2020 Order.

Moreover, Defendant's productions to date and its written responses to the discovery requests make clear that it has and will be producing a broad, responsive scope of documents. As discussed during the August 3, 2020 hearing (and as is evident from the documents produced to date), the production requires careful redaction to protect PII contained in references to policies irrelevant to this litigation and clearance of confidentiality obligations to third parties. Defendant has been diligently reviewing documents and undertaking that work so that it can complete production in a reasonable time period.

In contrast, Plaintiff did not produce a single document after the August 3, 2020 hearing notwithstanding the Court's clear mandate that Plaintiff's production take place within 7 days of the Court's Order and the Court's admonition to Plaintiff that "discovery may not be held hostage." Rather, Plaintiff appears to rely entirely on a voluntary exchange of documents (that took place before Plaintiff had even received Defendant's discovery requests) as a satisfaction of its discovery obligations. In light of Plaintiff's failure to produce any additional documents (or comply with the Court's Order), Defendant can only surmise that the voluntary production by Plaintiff constitutes the entirety of the documents in Plaintiff's possession relating in any way to the policy at issue (despite the marked absence of significant email correspondence or documents relating to the alleged "investigation" undertaken by Plaintiff). Notably, Plaintiff has yet to produce any privilege log relating to its production (which contains numerous documents withheld in their entirety on the basis of privilege). Plaintiff has not provided any justification for its failure to produce such a log notwithstanding that it completed its review and production of all responsive documents nearly seven months ago.

Finally, with regard to Plaintiff's argument relating to Defendant's objection to Request No. 12 in Plaintiff's Request for Production—which is the only objection in Defendant's response to which Plaintiff takes issue––Plaintiff fails to present any justification for its expansive request (despite repeated opportunities to articulate the relevance of the requested documents). Request number 12 seeks "communications between Geronta Funding or any of its agents and EEA, ViaSource or any parents, subsidiaries, affiliates, principals or agents of EEA or ViaSource." Defendant agreed to produce all responsive documents relating to the life insurance policy at issue in this litigation. As discussed in more detail in section (e) below, that limitation is entirely consistent with the issues involved in this action.

This case involves a single life insurance policy, issued in 2007, for which Plaintiff has collected over $3 million in premiums over approximately 12 consecutive years until the insured passed away. Only when the insured passed away did Plaintiff raise for the very first time an alleged lack of insurable interest relating to the policy in a transparent attempt to avoid its obligation to pay out the $5 million death benefit. Conveniently, not once during the time that it was collecting millions of dollars in premiums did it even come close to suggesting that there was a problem with the policy. In fact, when Defendant purchased the policy (which is entirely legal under New Jersey's statute relating to life settlements), Plaintiff represented to Defendant that the policy was valid and enforceable.

Plaintiff's claim in this action revolves around a single issue: whether the specific life insurance policy at issue lacked an insurable interest at the time it was procured. Thus, the only documents relevant to Plaintiff's claim necessarily must relate to *that* life insurance policy. Yet Plaintiff's Request No. 12 (the only request for which Plaintiff claims Defendant's objections are improper) seeks all communications between Defendant (and its agents) and EEA, ViaSource, and any of their agents relating to *any* life insurance policy.

Steven C. Mannion, USMJ

September 15, 2020  |  Page 4 of 4

Such communications cannot conceivably have any bearing on the presence or lack of insurable interest with regard to the life insurance policy at issue in this case.

Seemingly acknowledging that its request well exceeds the relevance parameters set forth in the federal rules, Ameritas now argues that the breadth of this request relates not to the insurable interest inquiry, but rather to whether Defendant is entitled to a return of premiums in the event the policy is found to have lacked an insurable interest.  One again, Plaintiff's argument is misplaced.  The Supreme Court of New Jersey has acknowledged that in the event a policy is void for lack of insurable interest, a party may be entitled to a refund of premium payments, particularly a later purchaser who was not involved in any illicit conduct.  In evaluating the propriety of such a return of premiums, the Court explained that a balancing of the equities must be undertaken.  But there is nothing in that opinion that suggests a court should consider facts surrounding insurance policies other than the policy that has been rescinded.  To the contrary, the relevant facts identified by the Court are the third party purchaser's knowledge of the purported STOLI scheme relating to the policy at issue and any participation or willful blindness to the same.  Communications that Defendant may have had relating to any other life insurance policies have absolutely no bearing on that analysis.  Because Plaintiff's request is neither relevant to either claims or defenses in this action or a request for documents that would lead to the discovery of admissible evidence, the request should be denied.

------

The parties appreciate the Court's continuing attention and assistance and stand ready to provide any additional information the Court may require in connection with this dispute letter.

Respectfully submitted jointly by,
Robert P. Lesko, Partner
FisherBroyles, LLP

Jesus Cuza, Rebecca Canamero, Katherine Skeele
Holland & Knight LLP

Cc: All Counsel of Record via ECF