UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERITAS LIFE INSURANCE CORP., <br><br> Plaintiff, <br><br> v. <br><br> WILMINGTON TRUST, N.A., <br><br> Defendant. | Civil Action No. 2:19-cv-18713 |

**WILMINGTON TRUST, N.A.'S BRIEF OPPOSING MOTION TO COMPEL FURTHER
<u>RESPONSE TO DOCUMENT REQUEST NO. 12</u>**

**INTRODUCTION**

There are only two issues involved in this litigation. First, this litigation must determine whether the Ameritas life insurance policy that Geronta Funding ("Geronta") purchased in 2015 ("Policy") is valid, such that Ameritas should have honored Geronta's claim on the Policy. Second, and only if the finder of fact determines that the Policy was stranger-initiated (or "STOLI"), this litigation must determine whether Geronta <u>knew</u> that the policy was stranger-initiated, which consideration may be taken into account in ordering a return of the $3 million paid in premiums on the policy. There are no broader issues at bar. There are no other life insurance policies at issue. And therefore, Ameritas' demand that Wilmington Trust, N.A. ("Securities Intermediary")[1] produce documents unrelated to the Policy is palpably improper.

Indeed, Ameritas has been unable to articulate how the documents it seeks are relevant in any way to this litigation, despite being provided with multiple opportunities to do so. Ameritas' Document Request No. 12 – the only document request with respect to which Ameritas has challenged Securities Intermediary's production – reads as follows:

> Produce all communications and summaries or notes of communications between Geronta Funding or any of its agents and EEA, ViaSource or any parents, subsidiaries, affiliates, principals or agents of EEA or ViaSource.

Securities Intermediary objected to the impropriety of the request, noting that "it is overly broad, not limited in scope of time to the issues raised in the Complaint, seeking documents with no connection to the Sarn Policy, and thus seeks information that is not reasonably related to any claim or defense in this case." Over this objection, Securities Intermediary produced all responsive documents that are non-privileged and that relate to the Policy – *i.e.*, all documents with any

---

[1] At all times, Securities Intermediary acts solely as the Securities Intermediary for the benefit of Geronta Funding, a Delaware statutory trust, and does not act in its individual capacity. *See, e.g.*, N.Y. U.C.C. § 8-102(a)(14)(ii). While Securities Intermediary has produced Geronta's responsive documents, Securities Intermediary was not itself responsible for due diligence related to Geronta's acquisition of the Policy.

potential connection to this litigation. Ameritas now moves to compel Securities Intermediary's further production of communications with no relationship to the Policy. Any such documents are completely irrelevant to the issues in this litigation.

Nowhere has Ameritas articulated a rational connection between this litigation and communications unrelated to the Policy. Instead, Ameritas argues that the over-broad communications it seeks:

> are likely to include information from EEA or concerns expressed by Geronta Funding or its agents relating to, for example: the other two policies known to have been issued on Sarn's life totaling $30 million, the apparent insufficiency of Sarn's income and net worth to pay for premiums due on the policy, the apparent efforts to value the policies at the same time that applications for the policies were being submitted to the insurers, the identities of the stranger investors who provided funding for Sarn's several policies, the illicit scheme pursuant to which the policy was procured, the brokers involved in procuring the policy from Ameritas who were later indicted and then convicted for their involvement in an illicit scheme to defraud insurers into issuing STOLI policies like the one in dispute.

*Moving Brief*, p. 6-7. This argument is illogical first and foremost because almost every example Ameritas puts forward in support of its demand for further documents is an example of a communication that *is* related to the Policy – and therefore, has already been produced, to the extent it exists and is in Securities Intermediary's possession, custody, or control. Sarn's alleged inability to pay the premiums on the Policy is an issue related to the Policy. Communications about efforts to value the Policy are related to the Policy. Information about purported stranger investors funding the Policy is related to the Policy. Any "scheme" or circumstance around the procurement of the Policy is related to the Policy. Thus, any documents in existence regarding those issues that are within Securities Intermediary's control have been produced.  What is not related to the Policy – information about other policies, is not relevant to this litigation. Ameritas has not articulated the credible relevance of the information it seeks with respect to the numerous other policies in the portfolio (insuring the lives of multitude of individuals), despite numerous opportunities to do so,

3

and Securities Intermediary should not be compelled to incur the substantial expense of producing a hugely over-broad universe of potentially sensitive, irrelevant documents, the redaction of which to protect personal identifying information alone would be an expense grossly disproportionate to the relevance of the documents sought.

## BACKGROUND

In 2007, Ameritas – a sophisticated life insurer – reviewed the application of Bernard Sarn for a $5 million policy of insurance on his life, to benefit a trust overseen by Mr. Sarn's step-son as trustee. Ameritas undertook an underwriting process. It issued the Policy. <u>Ameritas proceeded to collect more than $3,000,000 in premium payments over the nearly twelve years that the Policy was in force</u>. In 2015, Geronta (an entity that was inexperienced in the life insurance industry) sought a verification of coverage from Ameritas when considering purchasing the Policy as part of its first portfolio of life insurance policies. In 2015, eight years after issuing the Policy, and eight years into its acceptance of hefty premium payments, Ameritas represented to Geronta that the Policy was in full force and effect.[2]  Geronta (relying on Ameritas' representation) bought the Policy, and paid premiums on it until Mr. Sarn's death in 2019.

Now, Ameritas has not only denied Geronta's valid claim under the Policy, but it also seeks to retain the $3 million it received in premium payments. Ameritas claims that the Policy is void *ab initio* because it was initiated by a stranger without an interest in Mr. Sarn's life. In its moving papers, Ameritas takes issue with the fact that the Policy was initiated to benefit a trust managed by Jonathan Hercsky, an individual Ameritas characterizes as a corrupt speculator in the business of initiating STOLI policies. Ameritas ignores, however, that <u>Mr. Hercsky is Mr. Sarn's son</u>. Characterizing Mr. Sarn's <u>son</u> as a stranger disinterested in his life is a tough spin to stomach and

---

[2] *See* Declaration of Katherine A. Skeele, dated December 18, 2020, filed herewith ("Skeele Dec.").

4

knowingly incorrect as a matter of law, and Geronta objects vehemently to any suggestion that it should have read the identity of the initial trustee as any sort of red flag. Notably, Ameritas clearly did not— not only when it issued the Policy but also during the twelve years that followed while it was gladly collecting over 3 million dollars in premiums it claimed to be due to it under the Policy.

The remaining "red flags" identified by Ameritas in its motion are simply distractions from the fact that the entity with the original investigating and underwriting access and duty was Ameritas. For example, Ameritas suggests that the indictment in 2011 of one of the brokers involved in the Policy's issuance should have been a red flag to Geronta, notwithstanding that Geronta only became aware of the Policy eight years after it was issued and therefore would not have been aware of the brokers involved in its issuance. By comparison, Ameritas' production in this litigation establishes that Ameritas was on notice of Mr. Lebovitz's involvement in the application in 2007,[3] before the Policy's issuance. Likewise, Ameritas' unsupported claim that the CPA Sam Friedman, does not exist is questionable given that a quick Google search immediately reveals a Sam Friedman, CPA, whose LinkedIn profile announces that he was practicing as a Senior Accountant – CPA in 2007 in the Greater New York City Area.[4] In any event, all of these alleged "red flags" were apparently conveniently and intentionally ignored by Ameritas during its underwriting process, during the incontestability period, and, again, during the twelve years that it was collecting millions of dollars in premium payments.

Ameritas' entire motion is simply an attempt to engage on an unfettered fishing expedition in the hopes of finding something to support its bad faith denial of the death claim after the fact given that the thousands of pages of documents it has received from Securities Intermediary and

---

[3] *See* Skeele Dec.
[4] *See* Mr. Freidman's LinkedIn profile, available at https://www.linkedin.com/in/sam-friedman-cpa-99b4032a/

numerous third parties has not uncovered any evidence to support its unfounded claims. Ameritas' attempt now to expand its discovery into documents relating to policies that are not at issue in this litigation is simply oppressive and should not be tolerated.

## ARGUMENT

### Point I
### Ameritas Has Not Met Its Burden on the Motion to Compel, Which Should be Denied

Though it has had several opportunities to do so in letters to Securities Intermediary and to the Court, in pre-motion conferences and in support of this Motion, Ameritas has never articulated how the information it seeks in Request No. 12 could be relevant to, or probative of, either its STOLI claim or the issue of Geronta's knowledge. That its request is an improper fishing expedition, intended primarily to burden and harass Securities Intermediary, is indicated by the hollowness of Ameritas' own justification of the discovery demand. The further production Ameritas seeks in response to Request No. 12 would not shed any light on the issues in this litigation. It would, however, foist a wildly expensive and time-consuming burden on Securities Intermediary.

Request No. 12 seeks documents relating to communications between the purchaser of the policy (Geronta Funding and agents, including Securities Intermediary) and the seller (EEA and its agents, including Viasource). <u>All</u> such communications – <u>not communications limited by relevance to the Policy</u>. Yet Ameritas has not made any credible argument for how communications not relevant to the Policy could possibly be probative in this litigation. In fact, as noted in the Introduction, the majority of justifications Ameritas has put forward for Request No. 12 describe documents that specifically relate to the Policy itself – a category of documents to which Securities Intermediary did <u>not</u> object, and which it produced. Thus: "Red flags" regarding Mr. Sarn's ability to afford premium payments, Mr. Sarn's alleged efforts to value the policy for

resale before its issuance, or the manner in which the policy was procured, including Ameritas' allegations about the "convicted brokers" involved in issuing the Policy, all are issues particular to the Policy. If communications existed on those topics, they would have been produced.

Ameritas suggests that there could be probative documents in Securities Intermediary's possession that do not have to do with the Policy. "While the standard of relevancy is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not appear germane merely on the theory that it might become so." *Claude P. Bamberger Intern., Inc. v. Rohm and Haas Co.*, C.A. No. 96-1041, 1998 WL 684263, *2 (D.N.J. Apr 1, 1998). Documents unrelated to the Policy are just that – unrelated, and have no place in discovery.

Ameritas' thin justifications for discovery related to other policies crumble on inspection. First, Ameritas makes no argument to support a request for documents related to any policies other than those insuring the life of Bernard Sarn. Therefore, despite the broad scope of its request, it has not presented an argument to compel a production related to the portfolio of policies in which Geronta holds the Policy.

Moreover, even a request for communications related to other policies insuring the life of Bernard Sarn is too broad – only one Policy is at issue here, and Securities Intermediary has made a full and complete production with respect to that Policy. Ameritas insinuates the existence of an "underlying scheme" encompassing multiple Sarn policies, but it has not provided any evidence to suggest that such a scheme is anything more than a litigation ploy. Ameritas has not offered a single justification for how documents not specifically relevant to the Policy could somehow "contain red flags" regarding the Policy.

Ameritas also suggests that Geronta would have communicated with EEA about time-of-issuance issues regarding other Sarn policies. This suggestion assumes that EEA was involved in the issuance of those policies – a pure speculation and bald accusation regarding a non-party that Ameritas has not even been so bold as to allege – and that even if EEA did have knowledge regarding some purported STOLI scheme, it would have shared that with Geronta (i.e., that it would have communicated the purported defects in those policies to a prospective buyer). In any event, based upon a review of the documents collected, Securities Intermediary has no such communications with EEA that would shed light on any alleged STOLI scheme.

Securities Intermediary has been forthright in its document productions in this action – a document production that demonstrates that Geronta did not have knowledge to suggest the policy was STOLI. To be sure, Securities Intermediary has collected and produced all non-privileged documents relating to the Policy at issue in this litigation.

## Point II
**Ameritas Has Not Presented Any Evidence, or Credible Argument, that the Policy Was Stranger-Initiated.**

A stranger initiated policy is void *ab initio*. This is not in dispute. But the sale of a policy does not indicate that it was – or even may have been stranger initiated. The secondary life market, the resale of policies of life insurance, has been recognized as legitimate since *Grigsby v. Russell*, 222 U.S. 149 (1911), wherein the U.S. Supreme Court established that, indeed, a policy of life insurance can be sold by its owner.

To demonstrate that a policy was stranger initiated requires a showing that it was, in fact, procured by a stranger at the time it was initiated. *Sun Life Assurance Company of Canada v. Wells Fargo Bank, N.A.*, No. 14-5789, 2016 WL 5746352 (D.N.J. Sept. 30, 2016) ("When analyzing whether such a procurement is a cover, courts should 'scrutinize the circumstances under which

the Policy was issued and determine who in fact procured or affected the Policy'"). In *Sun Life*, on which Ameritas relies in its motion, the conclusion that the policy at issue was STOLI was not founded on a smattering of "red flags," it was founded on evidence that specific, identified strangers actually initiated and had an interest in the policy; these investors were demonstrated by Sun Life and found by the Court to have been the interested initiators of the policy. *Sun Life*, 2016 WL 5746352 at *2, *10.

Ameritas has not identified any evidence whatsoever to show that the policy was STOLI. Instead, it has spun a theory out of alleged, unsupported "red flags" – all circumstantial, and none proof that the Policy was, in actuality, initiated by a ***stranger for his, her or its benefit***, at the time of procurement. To be sure, the trustee and party that Ameritas claims was involved in procuring the policy was the ***insured's son***. Still, almost two years after Mr. Sarn's death, and after receiving 13,282 pages of documents from Wilmington, after issuing more than twenty subpoenas to third parties who have produced 5,620 pages (to date) of documents in response, Ameritas still cannot point to any evidence of a specific fact to establish its hollow claim that the policy was stranger initiated.

*Sun Life* demonstrates that the burden to establish the fact of stranger initiation of an allegedly STOLI policy is on the carrier denying the death benefit claim. Ameritas has not even approached meeting that burden. It should not now be permitted to engage in a further fishing expedition in an effort to support that denial and obtain documents that have no relevance to the issues or Policy involved in this litigation.

### Point III
### If the Policy Were STOLI, Ameritas – Not Geronta – Should Have Discovered That Fact.

Ameritas underwrote the Policy, but according to Ameritas, Geronta should have detected a STOLI that Ameritas never detected, even though Geronta had no connection whatsoever to the

9

procurement of the Policy or underwriting process. After accepting premium payments for over eleven years, Ameritas suggests that Geronta "should have become aware" of the alleged, but unsupported "circumstances" that Ameritas relies on to suggest the Policy was STOLI, and therefore, that Geronta is not entitled to a return of premium payments. Ameritas projects onto Geronta some greater knowledge, some fount of information <u>allegedly or conveniently</u> undiscovered by Ameritas in underwriting, in two years of contestability, and in eleven years of premium payments. But Geronta – <u>again, not an insurance-related entity, and with no experience investing in life insurance products at the time it purchased the policy</u> – had none of the access Ameritas had. It saw none of the "red flags" Ameritas now identifies; <u>and it actually relied on Ameritas' representations to Geronta prior to purchasing the Policy that the Policy was a valid and enforceable Policy</u>. There is no basis for Ameritas' suggestion that Geronta may somehow have obtained information that Ameritas never claims not to have had about the Policy's procurement.

Nevertheless, Ameritas—in furtherance of its bad faith since unlawfully denying the death benefits—suggests that it has a basis to retain premium payments – fully, $3 million. But it is well established in New Jersey law that the buyer of a policy of life insurance that turns out to be void is, without evidence to the contrary, blameless. *Sun Life*, 2016 WL 5746352, at *12. *Sun Life* made clear that allowing a life insurer that failed to uncover a fraud from a policy's inception should not benefit for its failure, and that allowing the insurer to retain premiums paid on a void policy would constitute an unjustifiable, unjust windfall to the detriment of a blameless insured. *See id.*

Ameritas does not identify any legal source for a duty residing with Geronta to implement any investigation, much less an investigation more thorough and effective than Ameritas' underwriting process, before purchasing the Policy. Securities Intermediary has produced all of the information both it and Geronta have about the Policy, and that information lays bare: neither

Geronta nor Securities Intermediary had any information to suggest that the Policy was STOLI. In fact, Ameritas does not even suggest, much less demonstrate, how Geronta or Securities Intermediary could have, or should have, accessed such information.

### Point IV
### The Discovery Ameritas Seeks is Disproportionate to the Needs of the Case

Among the considerations to determine whether discovery sought in a litigation is proportional are the questions of the parties' relative access to information, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Advisory Committee Note to Fed. R. Civ. P. 26*.

Here, the primary issue at bar is whether the Policy was stranger initiated. Ameritas' grasping for information beyond the scope of the Policy itself, extremely unlikely to lead to the discovery of admissible evidence, is pure speculation. Meanwhile, the burden of production on Securities Intermediary, to produce all communications with EEA related to any policy in the portfolio, would likely cost hundreds of hours of review and – most time-consuming – redaction of the reams of personal identifying information that Securities Intermediary is required to protect. Given these factors, the discovery Ameritas seeks by its Motion is disproportionate, and should be denied.

### Point V
### Ameritas Has Not Been Forthright in Its Production

Ameritas suggests that Securities Intermediary has not produced the full universe of its responsive documents, but in doing so, Ameritas lays bare that it has not produced <u>a single document</u> related to the "investigation" it purports to have conducted. <u>In fact, Ameritas did not produce a single document in response to Securities Intermediary's discovery requests—claiming instead that an informal pre-litigation production constituted the entire universe of documents</u>.

But, Securities Intermediary's document requests sought production of Ameritas' full investigation file and, yet, not a single responsive document has been produced. Based on this it is clear that either Ameritas has been playing games in this proceeding, openly violating its discovery obligations, or Ameritas in fact has <u>no</u> evidentiary support for the allegations supporting this Motion, and is proceeding on mere speculation. Because it is highly unlikely that Ameritas will admit to violating it discovery obligations, which will expose it to severe sanctions, we are left with mere speculation. But mere speculation is an inadequate basis for discovery that goes beyond the scope of the issues at bar, and cannot be credited in support of Ameritas' argument.

## CONCLUSION

For all of the reasons set forth herein, Securities Intermediary respectfully requests that the Motion be denied in its entirety.

Dated: December 18, 2020

**HOLLAND & KNIGHT LLP**

By: /s/ *Katherine A. Skeele*
Katherine A. Skeele
31 W. 52nd Street, 12th Floor
New York, NY 10019
Telephone: (212) 513-3534
katherine.skeele@hklaw.com

Jesus Cuza (admitted *pro hac vice*)
Rebecca Canamero (admitted *pro hac vice*)
Annelise Del Rivero (admitted *pro hac vice*)
701 Brickell Avenue, Suite 3300
Miami, FL  33131
Telephone: (305) 374-8500
jesus.cuza@hklaw.com
rebecca.canamero@hklaw.com
annelise.delrivero@hklaw.com
*Attorneys for Defendant/Counter-Plaintiff Wilmington Trust, N.A.*