# Holland & Knight

31 West 52nd Street | New York, NY 10019 | T 212.513.3200 | F 212.385.9010
Holland & Knight LLP | www.hklaw.com

Katherine A. Skeele
(212) 513-3397
katherine.skeele@hklaw.com

July 1, 2021

*Via ECF*

Honorable Edward S. Kiel
United States Magistrate Judge for the District of
New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark NJ 07101

Re:   *Ameritas Life Ins. Corp. v. Wilmington Trust, N.A.*, Civil Action No. 2:19-cv-18713
        Joint Letter Agenda for January 26, 2021 Conference

Dear Judge Kiel:

In conformity with Your Honor's direction, given at the May 11, 2021 conference in the above-captioned action, and with the Order entered thereafter (Dkt. No. 60), the parties respectfully submit the following joint pre-motion letter in anticipation of the July 9, 2021 conference in the above-referenced matter. Thank you for making yourself available to hear these issues.

### **Statement of Proposed Movant Wilmington Trust, N.A. ("Wilmington Trust")**

Defendant Wilmington Trust seeks to compel Ameritas' production of its investigation files underlying its denial of coverage that is at the heart of both Ameritas' claim that the policy at issue in this litigation was stranger-initiated and Wilmington Trust's counterclaim for bad faith denial of coverage under that policy. Ameritas has wrongfully hidden the existence of these files from Wilmington Trust, has failed to comply with the direct orders of this Court in failing to disclose

Anchorage | Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Houston | Jacksonville
Lakeland | Los Angeles | Miami | New York | Northern Virginia | Orlando | Portland | San Francisco | Stamford
Tallahassee | Tampa | Washington, D.C. | West Palm Beach

Bogotá | London | Mexico City

Honorable Edward S. Kiel
July 1, 2021
Page 2

that it withheld them from production, and now seeks to hide behind a legally hollow claim of privilege -- despite the fact that Wilmington Trust itself has relied upon the very documents it has withheld in its motion to compel further production (*see* Dkt No. 45, p. 2-3 ["Ameritas' investigation has revealed that…;" "During the course of its investigation in connection with this action…;" "The investigation also revealed that…"]).

Relevant Background and Procedural History

In 2007, Ameritas reviewed the application of Bernard Sarn for a $5 million policy of insurance on his life, undertook an underwriting process, and issued the Policy at issue in this litigation. Ameritas proceeded to collect more than $3,000,000 in premium payments over the nearly twelve years that the Policy was in force. Upon receipt of a claim for death benefit proceeds, Ameritas denied coverage, but kept the over $3 million it collected over the lifetime of the Policy. It then initiated this action in an attempt to establish that the Policy was void *ab initio*, claiming it was stranger-initiated. Wilmington Trust has counterclaimed, as securities intermediary for the beneficial owner of the policy, Geronta, on the basis that Ameritas' denial of coverage was made in bad faith.

On a pre-litigation basis, the parties in this matter engaged in a voluntary early exchange of documents relevant to this matter. Ameritas served self-selected documents it deemed relevant to its claims. After litigation commenced, on May 26, 2020, Ameritas' served Rule 26 initial disclosures identifying Daniel Hepner as having information relevant to claims in the action on the basis that he was familiar with Ameritas' investigation concerning Sarn's income and net worth and Jill O'Connor as having knowledge of Ameritas' review of Wilmington Trust's claim for payment of benefits. Thus, Ameritas directly acknowledged (as it must) that its investigations are of direct relevance in this litigation. But in identifying discoverable documents in Ameritas' possession, custody or control, Ameritas pointed only to those documents Ameritas had already voluntarily produced on January 31, 2020 – failing to produce a single additional document in response to any of the requests served on it by Wilmington Trust. The pre-litigation voluntary production, however, did not include any investigation files. This initial disclosure had the effect of representing to Wilmington Trust that Ameritas did not have investigation files. It is now clear that that representation was false.

On or about April 22, 2020, Wilmington Trust served Ameritas by overnight mail (with simultaneous courtesy copy by email) with a set of 17 document requests. Ameritas did not respond timely, thus waiving its objections. In fact, after promising responses would be forthcoming by early June, Ameritas did not serve responses until July 21, 2020 (the day after Wilmington Trust filed a pre-motion letter seeking leave to move to compel responses [Dkt No. 29]). When Ameritas did finally respond, asserting boilerplate privilege objections without identifying any specific privilege, and directing Wilmington Trust to its January 31, 2020 production for responsive documents without stating that any document was being withheld on the basis of privilege, it did not agree to produce to a single document in response.

Honorable Edward S. Kiel
July 1, 2021
Page 3

Request No. 1 of Wilmington Trust's requests for production to Ameritas sought: "Any and all Documents relating to the Policy." Request No. 2 sought: "Any and all Documents relating to Bernard Sarn." Request No. 3 sought "Any and all documents referencing any investigation or identification of STOLI activity relating to Shaye Gross and/or Liberty Planning, Inc." These requests clearly encompass Ameritas' investigation files -- investigation files that would necessarily have informed the basis for any good faith denial of claim on the Policy, investigation files that would have turned up the purported "red flags" Ameritas alleges exist to suggest that the Policy was stranger-initiated, and thus investigation files critically central in this action.

Ameritas' responses to Requests 1, 2, and 3, after asserting boilerplate, untimely objections, simply stated that Ameritas had already disclosed responsive documents in informal, pre-litigation disclosures. <u>The response did not state that Ameritas was withholding specific documents or categories of documents on the basis of its objections.</u>

On August 3, 2020, at a conference before Judge Mannion, the parties discussed the fact that Ameritas was withholding a responsive document production because Wilmington Trust had yet to initiate its rolling production (in response to later-served discovery). Judge Mannion sternly admonished Ameritas, and entered a Supplemental Scheduling Order (Dkt No. 37, entered August 4, 2020) confirming, that "Plaintiff will make its production within 7 days. Discovery may not be held hostage." Judge Mannion further ordered that all parties were to "ensure their document responses conform with the guidance provided by the Court and otherwise amend their responses within ten days." From the context of the conference, it was clear that this directive explicitly required the parties to make a clear statement in their written responses to document requests if documents were being withheld pursuant to an objection. Wilmington Trust timely supplemented its responses to provide exactly such a statement by the deadline, August 14, 2020.

<u>Ameritas' (Non-Existant) Production is Woefully, and Wilfully, Inadequate</u>

Ameritas served Amended Responses and Objections to Requests for Production on August 24, 2020 – 10 days after the Court-imposed deadline. Those responses still contained boilerplate privilege and other objections, over which Ameritas responded to requests: "Subject to and without waiving objections, Ameritas directs defendant to the documents produced by Ameritas on January 31, 2020, which include all relevant and non-privileged documents responsive to this request." <u>Ameritas did not state that it was withholding any documents responsive to requests 1-3, or any other requests, on the basis of privilege</u>.

Without ever producing a document responsive to Wilmington Trust's requests, Ameritas served a privilege log dated September 28, 2020, signaling that its production was "complete." That log listed a total of only 66 documents, not a single one of which is described such that its

nature can be ascertained.[1] But not one document description includes any reference to investigation files. In fact, counsel for Ameritas has since directly admitted to counsel for Wilmington Trust that <u>Ameritas did not log its investigation files</u>.

Federal Rule of Civil Procedure 26(b)(5) provides:

> (A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and to do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Local Civil Rule 34.1 provides:

> Where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked. When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether any such documents exist.

Judge Mannion reiterated the above rule directly at the August 3, 2020 conference, and memorialized it by reference in an August 4, 2020 text order.

    In consequence, Ameritas' repeated assertion that it produced responsive documents on January 31, 2020, led Wilmington Trust to believe – quite reasonably – that Ameritas did not have investigation files or any documents not produced in January 2020 or included in Ameritas' September 28, 2020 privilege log. That belief was punctured on November 23, 2020, when <u>Ameritas disclosed and relied upon the contents of its investigation files in its motion to compel</u>. Dkt No. 45.

    On January 22, 2021, Wilmington Trust conferred, by its counsel, with counsel for Ameritas on Ameritas' failure to produce investigation files. Ameritas, by its counsel, acknowledged during that conversation that it did conduct an investigation of the claim on the

---

[1] The Third Circuit has rejected broadside invocations of privilege which fail to designate with particularity the specific documents or file to which the claim of privilege applies.' *Torres v. Kuzniasz*, 936 F. Supp. 1201 (D.N.J. 1996); *see also United States v. O'Neill*, 619 F.2d 222 (3d Cir. 1980).

Policy before denying it, and that its investigation has continued during litigation, but that Ameritas claims a work-product privilege over its entire investigation file because the investigations were conducted by in-house and outside counsel. Ameritas' invocation of privilege is baseless and unsupported by the law. Moreover, Ameritas' conduct has been calculated to obfuscate the existence of key documents, to Wilmington Trust's detriment.

Ameritas' Investigation Files Are Not Protected by the Work Product Doctrine

Even if Ameritas had sufficiently interposed a work-product objection, and fulfilled its obligation to identify documents withheld on the basis of that objection, *which it did not*, Ameritas' claim for work product protection of its claim investigation file would still fail. Federal law governs the work product doctrine, even in diversity cases, by the uniform federal standard set forth in FRCP 26(b)(3). *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). And federal law is clear: an "insurance company may not insulate itself from discovery by hiring an attorney to conduct ordinary claims investigations." *Halpin v. Barnegat Bay Dredging Co., Inc.*, 2011 WL 2559678 (D.N.J. June 27, 2011), *citing First Aviation Servs. v. Gulf Ins. Co.*, 205 F.R.D. 65, 69 (D. Conn. 2001). "[E]ven where the reasonable anticipation of litigation is established, whether the document comes within the purview of the work-product doctrine still depends primarily on the reason or purpose for the document's production." *Id.*, *citing U.S. v. Rockwell Int'l*, 897 F.2d 1255, 1265-66 (3d Cir. 1990), *In re Gabapentin Patent Litigation*, 214 F.R.D. 178, 184 (D.N.J. 2003). The "work product doctrine does not apply when an attorney undertakes an internal investigation to comply with internal policy" but rather, "only applies where the materials in question were prepared in anticipation of litigation and not in the course of an investigation to discover the precise facts of a particular incident." *Id.*, *citing Freedman & Gersten, LLP v. Bank of Am., N.A.*, No. 09–5351 (SRC)(MAS), 2010 WL 5139874 (D.N.J. Dec. 8, 2010).

Claim investigation is an ordinary business function of an insurer. It is presumptively not privileged. "[T]he nature of the insurance business is such that an insurance company must investigate a claim prior to determining whether to pay its insured, and thus pre-litigation investigation is the routine business of insurance companies." *Halpin v. Barnegat Bay Dredging Co., Inc.*, 2011 WL 2559678 (D.N.J. June 27, 2011); *St. Paul Reinsurance Co. v. Commercial Fin. Corp.,* 197 F.R.D. 620, 635 (N.D. Iowa 2000)*.* "[I]nsurer's investigative records ... [are] not subject to the work product privilege and should be presumed not to be privileged when the records pertained to the investigation before the insurer made its final decision to deny the insured's claim. It is presumed that a document or thing prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product. Likewise, anticipation of litigation is presumed unreasonable under the Rule before a final decision is reached on the claim." *Id.*, *citing Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 190 F.R.D. 532, 537–38 (S.D. Ind.1999)*.* This is the case <u>even if attorneys are involved in, conduct, or direct the claim investigation</u>. *See American Home Assur. Co. v. U.S.*, 2009 WL 3245445 (D.N.J. 2009) (It is

well-settled that reports generated in the course of general investigations, even if litigation is arguably anticipated, are not entitled to work-product protection), *citing Am. Ins. Co. v. Elgot Sales Corp.*, 1998 WL 647206 (S.D.N.Y. Sept. 21, 1998); *Harper v. Auto–Owners, Inc. Co.*, 138 F.R.D. 655 (S.D. Ind. 1991) ("Even after litigation is justifiably anticipated, routine or ordinary investigations or reports are not work-product and may be obtained as normal discovery without a special showing of need"). As one court reasoned, "investigations conducted prior to a decision to deny coverage *cannot* be considered 'in anticipation of litigation,' because no litigation could be anticipated until a determination was made not to pay [the] claim." *Evanston Ins. Co. v. Oea, Inc.,* No. 02-1505-DFL-PAN, 2006 WL 1192737, at *4 (S.D.N.Y. May 4, 2006) (emphasis added).

Ameritas' Investigation Files Are Not Protected by the Work Product Doctrine

Ameritas' investigation of the claim on the Policy, and the origin of the Policy itself, was obviously not an internal investigation. It was an investigation of facts outside of Ameritas, relating to the Policy application process -- an investigation that would necessarily encompass contact with outside parties. By definition, any communication made as part of Ameritas' investigation to a person or entity outside Ameritas is not attorney-client privileged. *Hedden v. Kean University*, 434 N.Y. Super. 1 (N.J. App. Div. 2013) ("[T]he attorney-client privilege generally applies to communications (1) in which legal advice is sought, (2) from an attorney acting in his capacity as a legal advisor, (3) and the communication is made in confidence, (4) by the client"). By the same token, any document in Ameritas' investigation file that is not a communication at all, but information found or received, is not attorney-client privileged. *See Id.* Given these exclusions, it is likely that most, if not all, of Ameritas' investigation file is outside the protection of attorney-client privilege by virtue simply of the narrow application of the privilege to attorney-client communications made for the purpose of legal advice. *See also Halbach v. Boyman*, 369 N.Y. Super. 323 (N.J. App. Div. 2004) ("Courts generally afford a narrow construction to claims of privilege in recognition of the fact that upholding a privilege can result in suppression of the truth" [*citations omitted*]); *Dry Branch Kaolin Co. v. Doe*, 263 N.J. Super. 325 (N.J. App. Div. 1993) ("the scope of the attorney-client privilege is 'to be strictly limited to the purposes for which it exists'" [*citation omitted*]).

Even if Ameritas' investigation file does contain documents that are communications solely between an in-house or outside counsel and Ameritas personnel, those communications remain non-privileged because their primary purpose is a business purpose – *i.e.*, claim adjustment. *See Zawadsky v. Bankers Standard Ins. Co.,* No. CV 14-2293 (RBK/AMD), 2015 WL 10853517, *5 (D.N.J. Dec. 30, 2015) (applying New Jersey law to conclude that communications between in-house counsel and other personnel of defendant related to coverage were not protected by the attorney-client privilege, because they were business records by their primary nature, related to the claim adjustment process. The Court ordered that the withheld documents be produced unredacted. Notably, the Court found defendant's conduct in failing to produce the at-issue document(s) in initial disclosures or in response to discovery, and in failing to identify the document with adequate specificity on its privilege log to be sanctionable. The

Honorable Edward S. Kiel
July 1, 2021
Page 7

Court imposed a sanction re-opening discovery and transferring costs incurred by plaintiff as a result of defendant's non-production to defendant).

Ameritas' Conduct Should Be Sanctioned

      Ameritas' conduct is sanctionable pursuant to Fed. R. Civ. P. 37(b)(2)(A), because Ameritas flouted the Order of Judge Mannion in failing to make a responsive production after entry of Judge Mannion's August 3, 2020 Order. As described previously herein, Ameritas has flouted not only the Federal Rules and Court rules, but also the direct Order of this Court in failing and refusing to make a production in response to Wilmington Trust's discovery, by failing to make clear what documents it has withheld and why, and by failing to accurately and completely log documents over which it claims a privilege interest. These failures have prejudiced Wilmington Trust's ability to develop its claims and defenses in this case. This is all the more so the case when Ameritas has withheld an investigation file <u>on which it has relied in this litigation</u>. Ameritas respectfully submits that its pre-motion costs must be transferred to Ameritas pursuant to Rule 37(b)(2)(C), and that if Ameritas further fails to produce its complete investigation files, and any other unproduced responsive documents, that Ameritas should be precluded from relying upon its investigation at trial (*see* Rule 37(b)(2)(A)(ii)).

Conclusion

Because its production to date has been willfully, misleadingly, and prejudicially incomplete, Wilmington Trust respectfully submits that this Court should order Ameritas immediately to produce a complete list of all documents not produced, and proceed to produce them all. Wilmington further requests that its costs of enforcement of its right to fulsome disclosure be shifted to Ameritas. Should this Court determine that there is not enough information or authority before it to justify an order to compel and an imposition of sanctions, Ameritas respectfully requests an opportunity for full briefing on this motion.

**Statement of Ameritas Life Ins. Corp. ("Ameritas")**

      Communications and documents generated in connection with the investigation conducted by and at the direction of Ameritas' counsel in this matter are protected by the attorney-client privilege and attorney work product doctrine. Application of these protections is so fundamental and obvious to Ameritas' attorneys' investigation as to render a log of all such documents and communications completely unnecessary. Ameritas timely advised Wilmington of its position in this regard both in Ameritas' written responses to Wilmington's document demands and the privilege log served by Ameritas on September 28, 2020.

      All of the communications and documents generated in the course of counsel's investigation occurred and were prepared after Ameritas' claims examiner requested a legal opinion from Ameritas' Assistant General Counsel, Michael White, Esq. on July 19, 2019 regarding the validity of the policy in light of indicators that it was an illegal STOLI contract and

a letter from Life Equity on August 23, 2019 threatening litigation against Ameritas if Ameritas would not immediately pay the claim. Mr. White referred the case to outside counsel to assist in evaluating the validity of the policy and to begin preparing the case for litigation in light of the threat communicated by Life Equity. None of the communications and documents at issue relate to a claim investigation that might otherwise be routinely undertaken by Ameritas with respect to a death claim under a life insurance policy. Thus, the authorities that Wilmington Trust has examined and relies upon are inapposite and its conclusions are incorrect.

**The Documents and Communications are Protected from Disclosure by the Attorney Work Product Doctrine**

Protection of attorney work product is afforded pursuant to *Fed. R. Civ. P.* 26(b)(3): "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." The Third Circuit has adopted a "two-part test for ascertaining whether the documents or things at issue should be protected under the work-product doctrine." *See In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003); *Muse-Freeman v. Bhatti*, 2008 U.S. Dist. LEXIS 40899, 2008 WL 2165147, at *1 (D.N.J. 2008); *Paris v. R.P. Scherer Corp.*, 2006 U.S. Dist. LEXIS 47413, 2006 WL 1982876, at *2 (D.N.J. 2006).

The first inquiry is "the reasonable anticipation test, which requires that the court determine whether litigation could reasonably have been anticipated...[with the] relevant inquiry [being] whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Gabapentin*, 214 F.R.D. at 183; *Maertin v. Armstrong World Indus.*, 172 F.R.D. 143, 148 (D.N.J. 1997); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993); *Rockwell Int'l*, 897 F.2d at 1266. "Although the litigation need not be imminent, there must be an identifiable specific claim of impending litigation." *Id.*; *see also Rockwell Int'l*, 897 F.2d at 1266; *Maertin*, 172 F.R.D. at 148; *Leonen*, 135 F.R.D. at 97.

The second inquiry "is whether the documents were prepared primarily for the purpose of litigation." *Id.* at 307; *see also Paris*, 2006 U.S. Dist. LEXIS 47413, 2006 WL 1982876, at *2; *In re Gabapentin*, 214 F.R.D. at 184. "To be protected by the work-product doctrine, a document must have been created for use at trial or because a lawyer or party reasonably anticipated that specific litigation would occur and prepared the document to advance the party's interest in the successful resolution of that litigation." *Willingham v. Ashcroft*, 228 F.R.D. 1, 6 (D.C. Cir. 2005).

The circumstances surrounding referral of this matter to counsel and the nature and purpose of the documents and communications at issue plainly demonstrate that they are protected from disclosure by the attorney work product doctrine. Ameritas received initial notice of Bernard Sarn's death on March 6, 2019. Proofs of claim were not submitted until June 25, 2019. In the interim, the New Jersey Supreme Court issued its opinion in *Sun Life v. Wells Fargo*, 238 N.J. 157

(June 4, 2019), wherein the court held that STOLI contracts are illegal and unenforceable under New Jersey's public policy against wagering on human life. The policy at issue in this case bears numerous characteristics that Ameritas now knows to be potential indicators of a STOLI contract. Therefore, on July 19, 2019, Ameritas' claims examiner requested a legal opinion from Ameritas' law department as to whether this policy is an illegal STOLI contract and therefore unenforceable as a matter of law. Ameritas retained outside counsel to assist in rendering that legal opinion. In the meantime, on August 23, 2019, Brian Stevens, Esq., Associate Legal Counsel for Life Equity, LLC (the servicing agent for the owner of the policy), threatened litigation if the claim was not paid within ten days. Accordingly, counsel for Ameritas commenced and directed an investigation in order to gather facts and evidence to advance its own interest in anticipated litigation.

Wilmington's argument that the attorney work product doctrine does not protect from disclosure investigations undertaken in the ordinary course of an insurers claim investigation is inapposite because Ameritas has not asserted the privilege with respect to such documents.

The District Courts in New Jersey have noted that application of the work product doctrine when asserted on behalf of an insurer is difficult, but the courts have also clearly observed an important distinction between a routine claim investigation, to which the work product doctrine may not apply, and an investigation in anticipation or furtherance of litigation, to which the doctrine most certainly does apply. "[Although] a company's investigation may shift from the ordinary course of business to an anticipation of litigation, there is no hard and fast rule as to when this occurs; rather, a fact-specific inquiry is required to determine when this shift occurs." *Westwood Prods. v. Great Am. E&S Ins. Co.*, Civil Action No. 10-3605 (MLC), 2011 U.S. Dist. LEXIS 84171, at *37 (D.N.J. Aug. 1, 2011) (*quoting St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 635 (N.D. Iowa 2000). To be sure, "an insurer's referral of a claim to its attorney may be a significant factor in determining when the insurer anticipates litigation." *Legends Mgmt. Co. v. Affiliated Ins. Co.*, Civil Action No. 2:16-CV-01608-SDW-SCM, 2017 U.S. Dist. LEXIS 154773, at *14-15 (D.N.J. Sep. 22, 2017). Thus, in *Legends Mgmt. Co. v. Affiliated Ins. Co.*, Magistrate Judge Mannion held that the work production doctrine protected reports and other documents prepared after the date when the insurer anticipated litigation would ensue per the attestation of the insurer's inside counsel. 2017 U.S. Dist. LEXIS 154773, at *14.

At all times after July 19, 2019, both Ameritas' in-house counsel and outside counsel functioned in their capacities as attorneys and counseled Ameritas on its decision to seek a declaration that the policy is void. Counsel's independent investigation has been an integral part of this counsel and central to counsel's preparation of the case for a successful disposition. Thus, any documents or communications generated after July 19, 2019 are protected as attorney work product. *See Fid. & Deposit Co. of Md. v. First Nat'l Cmty. Bankcorp*, No. 12-1784, 2016 U.S. Dist. LEXIS 130911, at *2-4 (M.D. Pa. Aug. 5, 2016) (denying motion by Defendant Bank to, in part, compel *in camera* review of communications listed on Plaintiff F&D's privilege log and holding that there was no evidence that attorney in plaintiff's corporate law department performed anything but legal work for plaintiff in relation to its rescission of the Bank's D&O policy; attorney

Honorable Edward S. Kiel
July 1, 2021
Page 10

did not act as a claims investigator or a business advisor but rather his sole function was legal in nature, primarily acting as a liaison with outside counsel.)

**Communications with Counsel and Documents Regarding Investigation by Counsel Are Protected by the Attorney-Client Privilege**

The attorney client privilege is codified in New Jersey Evidence Rule N.J.R.E. 504(1). It provides that "communications between [a] lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it." Insurance companies are certainly entitled to claim the privilege with respect to communications with their attorneys, and communications made to obtain legal advice do not lose protection of the privilege merely because they involve an insurance claim. *Legends Mgmt. Co. v. Affiliated Ins. Co.*, *supra*; *see also Reliance Ins. Co. v. Am. Lintex Corp.*, No. 00-5568, 2001 U.S. Dist. LEXIS 7140, at *6-7 (S.D.N.Y. May 31, 2001). Thus, the court in *Legends Mgmt. Co. v. Affiliated Ins. Co.* found communications exchanged between outside counsel and in-house counsel consisting of legal advice regarding the extent of coverage, if any, under the policy, and recommendations regarding examinations under oath are privileged and protected from disclosure. *Id.*

Wilmington's reliance on *Zawadsky v. Bankers Standard Ins. Co.*, No. CV 14-2293 (RBK/AMD), 2015 WL 10853517, *5 (D.N.J. Dec. 30, 2015) is misplaced because the insurer in that case failed to offer any proof or affidavit supporting its assertions that the subject communications were not made in the ordinary course of a claim review. The communications there occurred at a time when the insurer was considering the question of whether the insured's claim was covered by the Policy. In the present case, there is no issue as to whether the policy would cover the loss; the issue is whether the policy was an illegal wagering contract. Moreover, Ameritas stands ready to submit proof that the subject communications were not made in the ordinary course of claim review but for the purpose of securing legal advice and preparing for this litigation.

Ameritas has plainly advised Wilmington that all communication subsequent to July 19, 2019 between Ameritas personnel and Ameritas' lawyers has been conducted in the course of the lawyer-client relationship and conducted in professional confidence, including all communications relating to counsel's investigation. None of the communications were conducted in the course of a routine claim review of any life insurance policy, including the policy at issue. Should the Court require, Ameritas can and will present a declaration to support its assertion of the privilege.

**As to Defendant's Purposeful Mischaracterizations and Outright Misrepresentations of Ameritas' Document Production**

Defendants' counsel has devoted much of its submission in an apparent attempt to revise the record of the parties' respective performance with their discovery obligations. A review of the actual record will show that Ameritas has been immediately forthcoming with all discovery to

Honorable Edward S. Kiel
July 1, 2021
Page 11

which defendant is entitled while having to diligently pursue defendant to honor both its informal discovery commitments and its obligations imposed by the rules. Thus, Ameritas feels compelled to correct the mischaracterizations offered by defendant.

Counsel for Ameritas proposed, and counsel for defendant agreed in December 2019 to each make a full and voluntary production of all relevant, non-privileged documents in an effort to facilitate an attempt at early amicable resolution. Ameritas did so on January 31 and February 21, producing more than 3,000 pages of documents. These documents consisted of *all* non-privileged documents that are relevant to the Sarn Policy at issue. That is, Ameritas honored the agreement that its counsel made with defendant's counsel to make a fulsome, early and voluntary production of its documents in an effort to clear a path for earnest discussions toward amicable resolution of the case. Defendant does not seem to grasp the concept that a party might actually disclose all relevant documents, voluntarily, prior to receiving discovery requests (as mandated by Rule 26) and without a motion to compel. Perhaps this is no wonder considering the record in this case clearly shows that defendant did not honor its counsels' agreement to do so.

Instead, defendant produced a paltry 128 pages in January 2020. Defendant then slow-rolled its broader production over the course of the next *nine* months, and only after Ameritas' repeated demands for compliance and more than one request for the court's assistance. Defendant did not complete its production until it was compelled to do so as a result of Ameritas' motion to compel, which was heard by Your Honor on January 26, 2021.

Ameritas has voluntarily produced all non-privileged documents relevant to the Sarn Policy in accordance with the December 2019 agreement of counsel to do so. So complete was that production that defendant's counsel could not think of any additional *non-privileged* documents for which to ask in discovery demands. Defendant now demands that Ameritas also produce all documents relating to communications between Ameritas and its counsel and the investigation undertaken independently by its counsel to prepare for this litigation. But those documents are protected from disclosure by the attorney-client communication and the work product doctrine. Defendant is simply not entitled to them.

Sincerely yours,

HOLLAND & KNIGHT LLP                    FISHERBROYLES

*/s Katherine A. Skeele*                */s Robert P. Lesko*
Katherine A. Skeele                     Robert P. Lesko